Chipchase v. Chipchase.

CHARLOTTE L. CHIPCHASE

v.

JOHN F. CHIPCHASE.

1. Desertion cannot be considered as obstinate on the part of one, when the separation is acquiesced in by, and entirely satisfactory to, the other, who neither entertains nor manifests any desire that the separation, nor the causes which brought it about, should cease.

2. A wife who is prosecuting an action against her husband for divorce for alleged adultery, cannot maintain that the separation, pending such suit, is obstinate on the part of the husband.

On petition, answer and proofs in open court.

*Mr. Ezra K. Seguine,* for the petitioner.

*Mr. Abram Q. Garretson,* for the defendant.

GREEN, V. C.

This is an action for divorce on the ground of desertion. The parties were married at Mount Hope, Westchester county, New York, June 14th, 1883. The complainant at the time of her marriage resided there with her father, and has continued to live there up to the present time.

The bill alleges that the defendant deserted his wife in August, 1885. It was filed on the 16th of May, 1890.

It appeared in the evidence that the husband at the time of the marriage was employed by a firm in New York city, but

soon after the head of the firm died and he was thrown out of employment; that he sought to get into business unsuccessfully until August, 1885, on the 25th day of which month he went to Kansas City to find employment.

This action on his part was with the entire consent and approbation of his wife, and with the understanding that, if he was successful in his efforts, she would follow him with their little child and take up their residence wherever he might have become established.

They corresponded, and he, from time to time, up to June, 1886, remitted money to her. He wrote her in January, 1886, that he had a promise of fair salary, on which he thought they could support themselves with economy, but advised her, in consequence of the inclement state of the weather, not to venture there with her infant until later in the season. His last remittance to her was on June 25th, 1886, and after that time the correspondence seems to have been less frequent, if it was not entirely discontinued.

He lost his situation in Kansas City and was reduced to penury. Friends assisted him with means to return to the east, and he came back in February, 1887. He returned by a route which had its termination at New York city, by the Hudson River railroad. He arrived in New York in the middle of the night, and went immediately to his relatives in Hudson county, New Jersey. He did not communicate the fact of his return to his wife, neither did he go where she was nor write to her.

He accounted for this, in the first place, by lack of means, which prevented his going there immediately after his arrival, and because he had heard that his wife did not desire to see him.

His wife knew, however, of his return, but neither sent to him nor communicated with him by letter or otherwise.

She took measures, early in the year 1887, to institute an action in the courts of New York against him for divorce on the ground of adultery, alleged to have been committed in Kansas City. Rumors of such action on her part reached the defendant, and he requested a connection of his family, Rev. Mr. Sherwood, to go and see his wife. Mr. Sherwood called upon her on April

4th, 1889, and told her that he came from her husband, saying that her husband was willing to support her, to the best of his ability, if she would return to him.    Her reply to Mr. Sherwood was, that she had no confidence in her husband's support, and was not willing and would not, under any circumstances, return to him, and further, that the child should not bear its father's name. Mr. Sherwood said further that he came from her husband at his request, and that he had told him to tell her that he would support her.

Mrs. Chipchase and her father say that this interview impressed them only with the idea that the proposition was made for the purpose of extracting some answer, and seem to have questioned its good faith.    She says that she employed Mr. John H. Hull, of the New York bar, to prosecute her action against her husband in that state as early as May, 1887, and did not prosecute the same actively for financial reasons.

Information reached the defendant that proceedings were to be taken in New Jersey looking to his arrest, and thereupon Mr. Rudolph Rabe was employed in his behalf.

Mr. Rabe testified that he waited on Mr. Hull, the counsel for the complainant, in New York, to prevent any such action. Complainant then called on Mr. Rabe, who declined to have any communication with her except in presence of her counsel; but, on her explaining that she had visited him at Mr. Hull's request, he asked her what she wanted.    She then said to him that she wanted to get rid of her husband, and he told her that her husband was willing to support her, and asked her if she was willing to go to New Jersey to live with him—that her husband would do the best he could by her; and she then said she would not do so under any circumstances.    Mr. Rabe then cautioned her again against talking, and told her not to have any further conversation with him.

Subsequent to that time the action for divorce was commenced by the service on the defendant of summons and complaint; the cause of action was an alleged adultery on the part of the defendant; a stipulation was agreed upon, after the suit was brought, by which the defendant paid a counsel fee and provided

Chipchase v. Chipchase.

for the payment to his wife for their child of $14 a month. It appears in evidence that this amount has been paid by the defendant from that time to the time of the trial. Mr. Rabe says that this arrangement was made because of the conviction in his mind that the court, on application, would make some such provision, and was to avoid the necessity of a motion for that purpose. He says, that in the conversation which Mrs. Chipchase had with him she again said she had no confidence in her husband, or something to that effect; that he had committed adultery in Kansas City, and she wanted to get rid of him, and he then told her she had best bring her suit. The action is still pending and undetermined, the last proceeding taken having been for the issuance of a commission to Kansas City to take testimony, on September 7th, 1889, nothing has been done since that time, except the substitution of attorneys.

It is clear that the departure of the defendant on the 25th of August, 1885, to Kansas City, with the consent and approval of his wife, and his continuance there, did not constitute a desertion, as alleged in the bill of complaint. The bill alleges willful, continued and obstinate desertion for a period of three years prior to April 22d, 1890, the time when the bill of complaint was verified. The separation between the parties, predicated on the theory of desertion, must have relation to the conduct of the defendant in not visiting or communicating with his wife on his return from Kansas City in February, 1887. If his excuse for refusing to visit or communicate with his wife after such return is not sufficient, it might furnish proof of a willful desertion on his part. I do not think his excuse a valid one for the period between his return and his sending Mr. Sherwood, in April, 1889, to his wife with an invitation to her to return, but I see nothing to attack the good faith of his offer at that time, unless it is that it was made when there were rumors of her intention to proceed against him for a divorce. Immediately after his return he was in search of employment, and, possibly, was not in a position to offer her a home. But when he did send he was with his friends, and there is nothing to

·show that he would not have been able to provide her with the :same comforts that he himself enjoyed.

But it is not necessary, in my view of the case, to pass upon ·the question as to whether the offer of the defendant to his wife was made in good faith, and was one which she had no legal :ground to refuse, in order to put an end to what otherwise might have been considered in law as a desertion on his part.

Desertion in this state, to form a ground for divorce, must not :only be willful and continued, but must be obstinate, and this ·involves a consideration of · the attitude assumed and maintained by the opposite party.    Desertion cannot be considered as obstinate on the part of one, when the separation is acquiesced in by, and entirely satisfactory to, the other, who neither enter- ·tains nor manifests any desire that the separation, nor the causes ·which brought it about, should cease.

Was the desertion of the defendant obstinate from February, 1887 ?

The testimony both of ·Mr. Sherwood and of Mr. Rabe, as well as the impression left by the examination of the complain- ant herself, leaves it entirely clear that, from May, 1887, the time when she consulted Mr. Hull, up to the day when she was examined as a witness in her own behalf, she had no desire or wish that the separation should be brought to an end.    In fact, it establishes that she had lost whatever of affection she may have once entertained for her husband, and in her own expressive words, " that she desired to get rid of him."    This forms a motive for her refusal to communicate with him, and while the courts pay due regard to womanly delicacy in hesitat- ing to make the first advance, they do not countenance an entire .absence of affection and a desire on the part of the wife to be forever relieved from the company or affection of her husband. But this was not an inactive desire.    It manifested itself in the ·most offensive form.    At the very commencement of· the period .through which the husband's desertion must be proved to have :been continued and obstinate, she was making arrangements ·with her counsel, in New York, to commence an action against :her husband for a divorce on the ground of adultery.    She

expressed such intention to others as well as to Mr. Rabe. The immediate prosecution of the suit was delayed only in consequence of financial reasons, but was commenced in June, 1889, eight months before the expiration of three years, from February, 1887, and that suit was pending and undetermined at the time she commenced this action in this state in May, 1890, and at the time of the trial.

Argument is not necessary to enforce the position that a party who is prosecuting a suit for divorce on the ground of adultery, cannot maintain that the separation of the opposite party during the pendency of such suit is obstinate, as understood with reference to desertion as the ground of a divorce.

In my opinion, this suit cannot be maintained under the circumstances presented, and the bill must be dismissed.